629 So.2d 891 (1993)
Roxanne M. O'DELL, Appellant,
v.
Donald Scott O'DELL, Appellee.
No. 93-00687.
District Court of Appeal of Florida, Second District.
November 17, 1993.
Rehearing Denied December 28, 1993.
Watson R. Sinden, St. Petersburg, for appellant.
Donald Scott O'Dell, pro se.
ALTENBERND, Judge.
Roxanne O'Dell appeals a postdissolution order granting Donald O'Dell visitation rights with his former stepson. Although the record indicates that the stepson would like to visit with his former stepfather, and a guardian ad litem has recommended such visitation, we are constrained to reverse the order.
Roxanne and Donald O'Dell were married in 1987. At the time of the marriage, Mrs. O'Dell was pregnant. Mr. O'Dell helped her through the pregnancy and apparently was in the delivery room when the infant was born. Mr. O'Dell is not the child's biological father. Nevertheless, until the couple divorced in August 1991, Mr. O'Dell was the child's "father," for all practical purposes. In 1990, Mrs. O'Dell gave birth to a second child, who is Mr. O'Dell's biological son.
The final judgment of dissolution of marriage gave Mr. O'Dell no right of visitation with his stepson and no obligation to support him. It gave him both visitation rights and an obligation to pay child support for his own son.
The parties have experienced various difficulties with visitation since the final judgment. A guardian ad litem was appointed to consider the problems. She submitted a thorough report to the court after an extensive investigation. While the guardian ad litem was critical of some of Mr. O'Dell's behavior, she recommended that he have visitation rights with both boys. She concluded that this was in the best interests of the stepson. The trial court accepted her recommendations and ordered visitation between Mr. O'Dell and his former stepson.
Chapter 61 makes no provision for visitation between unrelated parties. The First District has held that a court has "no authority to compel visitation between a child and one who is neither a parent, grandparent, or great-grandparent." Meeks v. Garner, 598 So.2d 261 (Fla. 1st DCA 1992). This court has repeatedly reversed orders giving visitation rights to nonparents. Fischer v. Fischer, 544 So.2d 1079 (Fla. 2d DCA 1989); Tamargo v. Tamargo, 348 So.2d 1163 (Fla. 2d DCA 1977).
We are aware that a "raging debate" exists concerning the wisdom of granting child visitation to "substitute" parents. See Martin L. Haines, III, Rights of Others in the Lives of Children, Fla.Bar J., Dec. 1992, at 44; N. David Korones & Deborah Marks, "Rights" of Others in the Lives of Children: A Basis for Confusion, Fla.Bar J., Dec. 1992, at 46; Burton Young, Should "Substitute" Parents Have Legal Rights to Child Visitation?, Fla. Bar J., Dec. 1992, at 43. This debate, however, is a matter primarily for the legislature to resolve.
*892 We are not required in this case to determine whether a court can ever order a child to visit an adult who lacks statutory visitation rights. Even assuming some inherent authority to grant visitation under very exceptional circumstances, the trial court had no legal basis on the face of this record to modify the visitation decision made in the final judgment.
We are aware that the stepson has been visiting with his former stepfather during the pendency of this appeal. From Mr. O'Dell's presentation in this court, it is obvious that he genuinely wishes to continue the visitation. We, of course, do not know whether the visits have been helpful or harmful for the seven-year-old boy and his younger brother. Although neither this court nor the guardian ad litem can compel Mrs. O'Dell to continue the visitation, we hope that she will consider the report of the guardian ad litem and the experiences of the last year in making her decision in the best interests of her sons.
Reversed and remanded.
RYDER, A.C.J., and PATTERSON, J., concur.